1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9               EASTERN DISTRICT OF CALIFORNIA

10

11   JEREMY JONES,                          Case No.: 1:22-cv-01119-SKO (PC)

12
                              Plaintiff,
13                                          **FINDINGS AND RECOMMENDATIONS TO**
                                            **DISMISS CERTAIN CLAIMS AND**
14         v.                               **DEFENDANT FOLLOWING SCREENING**
                                            **OF THE SECOND AMENDED**
15                                          **COMPLAINT**

16   D. COREE, et al.,                      **14-DAY OBJECTION DEADLINE**

17                                          Clerk of the Court to Assign District Judge
                              Defendants.
18

19
           Plaintiff Jeremy Jones is proceeding pro se and *in forma pauperis* in this civil rights action
20
     pursuant to 42 U.S.C. § 1983.
21
           Following initial screening, Plaintiff filed a first amended complaint on August 14, 2023.
22
     (Doc. 10.) The Court issued its Second Screening Order on June 6, 2024. (Doc. 11.) It found
23
     Plaintiff's first amended complaint stated the following cognizable claims: First Amendment
24
     retaliation and Eighth Amendment conditions of confinement claims against Defendant Jiminez,
25
     as well as Eighth Amendment deliberate indifference to serious medical needs claims against
26
     Defendants Ahlmeyer, Castro, Grewal, Igbinosa, Mejia, Montes, Navarro, Pena, Serda and
27
     Stovall. (*Id.* at 4-19.) It further found the first amended complaint failed to state any other
28

1    cognizable claim against any other named individual. (*Id*.) Plaintiff was directed to do one of the

2    following: (1) notify the Court that he was willing to proceed on his cognizable claims only, or

3    (2) file a second amended complaint, or (3) file a notice of voluntary dismissal. (*Id*. at 21.)  On

4    June 28, 2024, Plaintiff filed a second amended complaint. (Doc. 12.)

5            **I.      SCREENING REQUIREMENT**

6            The Court is required to screen complaints brought by prisoners seeking relief against a

7    governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

8    The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious,

9    fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant

10   who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if

11   it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal

12   theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

13           **II.     PLEADING REQUIREMENTS**

14                   **A.  Federal Rule of Civil Procedure 8(a)**

15           "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited

16   exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain

17   "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R.

18   Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the

19   plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal

20   quotation marks & citation omitted).

21           Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a

22   cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556

23   U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must

24   set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"

25   *Id*. (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal

26   conclusions are not. *Id*. (citing *Twombly*, 550 U.S. at 555).

27           The Court construes pleadings of pro se prisoners liberally and affords them the benefit of

28   any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the

2

1    liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal

2    theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation

3    of a civil rights complaint may not supply essential elements of the claim that were not initially

4    pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal

5    quotation marks & citation omitted), and courts "are not required to indulge unwarranted

6    inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation

7    marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not

8    sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's

9    liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

10                          **B.  Linkage and Causation**

11          Section 1983 provides a cause of action for the violation of constitutional or other federal

12    rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under

13    section 1983, a plaintiff must show a causal connection or link between the actions of the

14    defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*,

15    423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the

16    deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative

17    act, participates in another's affirmative acts, or omits to perform an act which he is legal required

18    to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740,

19    743 (9th Cir. 1978) (citation omitted).

20                          **C.  Supervisory Liability**

21          Liability may not be imposed on supervisory personnel for the actions or omissions of

22    their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g.,*

23    *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to

24    adduce evidence the named supervisory defendants "themselves acted or failed to act

25    unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v.*

26    *C'nty of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934

27    (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section

28

1    1983 there must be a showing of personal participation in the alleged rights deprivation: there is

2    no respondeat superior liability under section 1983").

3         Supervisors may be held liable only if they "participated in or directed the violations, or

4    knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th

5    Cir. 1989). "The requisite causal connection may be established when an official sets in motion a

6    'series of acts by others which the actor knows or reasonably should know would cause others to

7    inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).  Accord

8    *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on

9    inaction in the training and supervision of subordinates).

10        Supervisory liability may also exist without any personal participation if the official

11   implemented "a policy so deficient that the policy itself is a repudiation of the constitutional

12   rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942

13   F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other*

14   *grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

15        To prove liability for an action or policy, the plaintiff "must ... demonstrate that his

16   deprivation resulted from an official policy or custom established by a ... policymaker possessed

17   with final authority to establish that policy." *Waggy v. Spokane County Washington*, 594 F.3d

18   707, 713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between

19   such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v.*

20   *Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the

21   involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v.*

22   *Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982

23   **III.    DISCUSSION**

24        **A.  Plaintiff's Second Amended Complaint**

25        Plaintiff names the following individuals employed at Kern Valley State Prison (KVSP)

26   as defendants in this action:
         Correctional Captain D. Goree
27       Correctional Lieutenant J. Brown
         Correctional Counselor II Thomas
28       Correctional Counselor I Valdez

                                         4

1
Correctional Counselor I Cortez
Associate Warden Jackson
2
Associate Warden Castro
Doctor Igbinosa
3
Appeals Analyst E. Ramos
4
Appeals Analyst B. Pena
Appeals Analyst A. Mejia
5
Compliance Analyst Y. Montes
Compliance Analyst M. Navarro
6
Grievance Coordinator S. Serda
7
Grievance Coordinator S. Stovall
Senior Psychologist S. Ahlmeyer
8
Senior Psychologist M. Grewal
Correctional Officer Jimenez
9
Correctional Counselor II Hernandez

10   (Doc. 12 at 1, 3-5.) Plaintiff seeks injunctive relief in the form of a restraining order against

11   Defendant Jiminez, removal of "all 128's and 115's as well as the Program Failure" from his file,

12   and money damages. (*Id*. at 22-23.)

**B.  Plaintiff's Claims**

**1.  Claim 1: 8th Amendment Conditions of Confinement**

a.  Factual Allegations

16       Plaintiff contends that since mid to late 1990s he has suffered from migraines that have

17   become more and more debilitating with time. (Doc. 12 at 10.) He suffers from hallucinations,

18   double vision, suicidal thoughts, and sensitivity to light and sound, and is "bedridden for days,

19   even weeks at a time." (*Id*.) Plaintiff alleges he was later diagnosed with

20   "photophobia/photosensitivity" and his quality of life diminished quickly. (*Id*.) Plaintiff contends

21   "[i]t wasn't until arriving at KVSP with almost twenty years in CDCR did this become an issue

22   with this one officer C/O Jimenez." (*Id*.) Plaintiff states that once he explained "how rare and

23   excruciating his migraines were, no other staff member has written the Plaintiff up for him

24   covering his back window to comply with medical instructions to 'lie down in a dark quiet

25   room.'" (*Id*.)

26       Plaintiff alleges that on March 30, 2020, while he "was in the middle of an excruciating

27   episode," he told Jimenez of his situation when Jimenez told him to uncover his back window.

28   (Doc. 12 at 10.) Plaintiff "pleaded to be left alone" and advised Jimenez that he would "show him

5

1    his documentation later, once count cleared." (*Id.*) Plaintiff states that after 5 p.m., when his

2    migraine "subsided enough and he (C/O) had time," he showed Jimenez his "medical instructions

3    he was in compliance with." (*Id.* at 11.) Plaintiff contends Jimenez "chose to take a very

4    unprofessional and immature approach by playing 'The Chrono Game,' becoming argumentative

5    and belligerent." (*Id.*) Plaintiff alleges Jimenez stated he was just going to let Plaintiff fight a

6    rules violation report (RVR) "since he could beat it, showing 'Deliberate Indifference' to

7    [Plaintiff's] condition … by refusing to permit window covering" while Plaintiff was suffering an

8    excruciating migraine. (*Id.*)

9                                    b.    Legal Standards

10            The Eighth Amendment protects prisoners from inhumane methods of punishment and

11   from inhumane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825 (1994); *Morgan v.*

12   *Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Thus, no matter where they are housed, prison

13   officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing,

14   sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)

15   (quotation marks & citations omitted). To establish a violation of this duty, a prisoner must first

16   demonstrate an objectively serious deprivation, one that amounts to the denial of "the minimal

17   civilized measures of life's necessities." *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996)

18   (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Second, a prisoner must demonstrate

19   that prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 303

20   (1991); *Johnson*, 217 F.3d at 733. A prison official is liable for denying an inmate humane

21   conditions of confinement only if "the official knows of and disregards an excessive risk to

22   inmate health and safety; the official must both be aware of facts from which the inference could

23   be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

24   *Farmer*, 511 U.S. at 837.

25                                    c.    Analysis

26            The Court construes claim one of Plaintiff's second amended complaint to allege an

27   Eighth Amendment conditions of confinement claim against Defendant Jimenez.

28

                                              6

1    Liberally construing the second amended complaint and accepting all facts as true,

2  Plaintiff plausibly alleges an Eighth Amendment conditions of confinement claim against

3  Defendant Jimenez. Plaintiff alleges Jimenez was deliberately indifferent to his personal health

4  and safety when Jimenez refused to allow Plaintiff to keep his back window covered despite

5  Plaintiff's well documented medical condition of photophobia/photosensitivity causing

6  excruciating migraines and medical directives that Plaintiff lie in a quiet and dark space when

7  suffering from a migraine.

8                    **2.  Claim 2: Fourteenth Amendment Due Process**

9                         a.  <u>Factual Allegations</u>

10   Plaintiff contends Defendants Goree, Brown, Thomas, Cortez, and Valdez "all had access

11  to the same documentation as C/O Jimenez as well as access to [Plaintiff's] medical file through

12  his PCP coupled with the multiple accommodation requests (1824s) and grievances," about which

13  Thomas interviewed him prior to disciplinary proceedings. (Doc. 12 at 11.) During the first

14  hearing, Brown denied his request to postpone the hearing to allow for his primary care provider

15  to appear by phone and to obtain the assistance of an investigative employee. (*Id*. at 12.) Plaintiff

16  states the denial occurred in the absence of any legitimate concern for the safety and security of

17  the institution "or any inconvenience to the institution." (*Id*.) Plaintiff states Brown "conducted an

18  unfair and partial hearing" that did not allow him to question the reporting officer "when he was

19  caught in a lie" and only gave his "ADA worker the opportunity to be a witness to give the

20  illusion of partiality." (*Id*.) Plaintiff contends during the hearing "for the second bogus now

21  'retaliatory' RVR," Brown "assigned himself as the [senior hearing officer] just so he could

22  [berate Plaintiff] about the grievance" Plaintiff filed against Brown. (*Id*.) Plaintiff contends "there

23  was no [true] hearing," and he was not allowed to speak or "offer up any kind of defense." (*Id*.)

24  Plaintiff states that once Brown "was done yelling and slamming things," he had Plaintiff

25  removed from his office without providing an investigative employee or staff assistance. (*Id*.)

26  Plaintiff alleges Brown violated his due process rights be refusing to allow Plaintiff to call "vital

27  witnesses" including medical personnel. (*Id*. at 12-13.)

28

7

1    Plaintiff contends the UCC[1] committee, chaired by Defendants Goree, Thomas, Cortez,

2    and Valdez, "all had access and knowledge" of his condition, "a mitigating circumstance that was

3    ignored." (Doc. 12 at 13.)  Plaintiff states he was not allowed to call doctors as witnesses, nor was

4    he allowed to speak. (*Id*.) Plaintiff contends that refusal "confirms their predisposition and their

5    pre-determination to deem [him] a 'program failure' and place him on C-status." (*Id*.) Plaintiff

6    alleges Cortez and Valdez, who had met with Plaintiff, instructed him to bring the documents

7    they had viewed to the UCC hearing "so they could be discussed." (*Id*.) Plaintiff maintains that

8    the "CCI's are present so one can act as the staff assistant" to advocate for the attendee, but "none

9    of them gave" him the opportunity to speak or to present a defense or mitigating factors in

10    violation of his due process rights. (*Id*. at 13-14.)

11    Plaintiff alleges he has a liberty interest in his "freedom because of the RVR's and 128's"

12    resulting from his medical condition mean he is "literally being kept in prison" for another three

13    years "because he wouldn't meet the five year disciplinary requirement." (*Id*. at 14.) In the

14    absence of those disciplinary reports and documentation, he would have been "seriously

15    considered suitable for parole." (*Id*.) Plaintiff contends the circumstance is particularly egregious

16    where "Lt. Gutierrez[2] postponed the hearing for the third bogus RVR retaliatory given, to ask the

17    doctor (Dr. Bonilla) the questions [Plaintiff had] prepared and got to the truth." (*Id*.) Gutierrez

18    "only dropped it to a 128 instead of dropping it outright like he promised." (*Id*.)

19                                    b.   Legal Standards

20    The Due Process Clause protects prisoners from being deprived of liberty without due

21    process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To state a cause of action for

22    deprivation of due process, a plaintiff must first establish the existence of a liberty interest for

23    which the protection is sought. "States may under certain circumstances create liberty interests

24    which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).

25    Liberty interests created by state law are generally limited to freedom from restraint which

26

27    [1] "UCC" refers to the Unit Classification Committee.

28    [2] "Lt. Gutierrez" is not named as a defendant in this action.

                                            8

1    "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of

2    prison life." *Id.* at 484.

3        "Prison disciplinary proceedings are not part of a criminal prosecution, and the full

4    panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556.

5    With respect to prison disciplinary proceedings, the minimum procedural requirements that must

6    be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner

7    receives written notice and the time of the hearing, so that the prisoner may prepare his defense;

8    (3) a written statement by the fact finders of the evidence they rely on and reasons for taking

9    disciplinary action; (4) the right of the prisoner to call witnesses and present documentary

10   evidence in his defense, when permitting him to do so would not be unduly hazardous to

11   institutional safety or correctional goals; and (5) legal assistance to the prisoner where the

12   prisoner is illiterate or the issues presented are legally complex. *Id*. at 563-71. Confrontation and

13   cross examination are not generally required. *Id*. at 567. If the five minimum *Wolff* requirements

14   are met, due process has been satisfied. *Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994).

15       "When prison officials limit a prisoner's right to defend himself they must have a

16   legitimate penological interest." *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992) (per

17   curiam) (concluding that prisoners do not have a right to have an independent drug test performed

18   at their own expense). The right to call witnesses may legitimately be limited by "the penological

19   need to provide swift discipline in individual cases . . . [or] by the very real dangers in prison life

20   which may result from violence or intimidation directed at either other inmates or staff." *Ponte v.*

21   *Real*, 471 U.S. 491, 495 (1985); *see also Mitchell v. Dupnik*, 75 F.3d 517, 525 (9th Cir. 1996);

22   *Koenig*, 971 F.2d at 423*; Zimmerlee v. Keeney*, 831 F.2d 183, 187-88 (9th Cir. 1987) (per

23   curiam).

24       "[T]he requirements of due process are satisfied if some evidence supports the decision by

25   the prison disciplinary board ...." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *see also*

26   *Touissaint v. McCarthy*, 926 F.2d 800, 802-03 (9th Cir. 1991); *Bostic v. Carlson*, 884 F.2d 1267,

27   1269-70 (9th Cir. 1989). The relevant inquiry is whether "there is any evidence in the record that

28   could support the conclusion reached ....as [t]he Federal Constitution does not require evidence

9

1    that logically precludes any conclusion but the one reached by the disciplinary board." *Hill*, at

2    455-57.

3                                  c.    Analysis

4           Liberally construing the second amended complaint and accepting all facts as true,

5    Plaintiff plausibly alleges due process violations against Defendants Goree, Brown, Thomas,

6    Cortez, and Valdez.[3] First, Plaintiff alleges that at both disciplinary hearings following the

7    issuance of rules violation reports, Defendant Brown denied Plaintiff his right to call witnesses

8    and to present a defense, in the absence of a legitimate penological interest, and his right to legal

9    assistance. *Wolff*, 418 U.S. at 563-71; *Koenig*, 971 F.2d at 423. Second, Plaintiff alleges that at

10   the UCC hearing, Defendants Goree, Thomas, Cortez, and Valdez similarly denied him the right

11   to call witnesses and to present a defense, as well as the right to legal assistance. *Id*.

12                       **3.    Claim 3: First Amendment Retaliation**

13                                  a.    Factual Allegations

14          Plaintiff contends that shortly after his initial encounter with Defendant Jimenez, Plaintiff

15   filed a grievance or appeal against Jimenez, who began retaliating immediately by "placing a

16   'Snitch Jacket'" on Plaintiff and "telling other races that he told the lieutenant they never lock the

17   porters up for count." (Doc. 12 at 15.)

18          Plaintiff contends that after "the guilty finding" following the first disciplinary hearing, he

19   had pending grievances against Defendant Brown and Jimenez. (*Id*.) When Jimenez learned of the

20   grievances, Jimenez "immediately showed up for a retaliatory cell search on the Plaintiff's

21   birthday, with no mask during the height of Covid, yelling into his cell." (*Id*.) Plaintiff states he

22   repeatedly asked Jimenez to put on a mask, but Jimenez refused. (*Id*.) Plaintiff advised Jimenez

23

24   _____

25   [3] The issuance of a false RVR or false crime report does not, in and of itself, support a claim under section
     1983. *See, e.g.*, *Ellis v. Foulk*, No. 14-cv-0802 AC P, 2014 WL 4676530, at *2 (E.D. Cal. Sept. 18, 2014)
     ("Plaintiff's protection from the arbitrary action of prison officials lies in 'the procedural due process
26   requirements as set forth in *Wolff v. McDonnell*'") [citing *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th
     Cir. 1984)]); *Solomon v. Meyer*, No. 11-cv-02827-JST (PR), 2014 WL 294576, at *2 (N.D. Cal. Jan. 27,
27   2014) ("[T]here is no constitutionally protected right to be free from false disciplinary charges") [citing
     *Chavira v. Rankin*, No. C 11-5730 CW (PR), 2012 WL 5914913, at *1 (N.D. Cal. Nov. 26, 2012) ("The
28   Constitution demands due process, not error-free decision-making")]).

                                              10

1   that he would not leave his cell without a supervisor present because Jimenez was retaliating

2   against him by labeling him a snitch and refused to wear a mask. (*Id*.) Jimenez informed Plaintiff

3   he would be written up and when Plaintiff asked for what he would be written up, Jimenez replied

4   "'I'll think of something.'" (*Id*. at 15-16.)

5        On that same date, August 12, 2020, Plaintiff received another "bogus" RVR, like the first

6   RVR. (*Id*. at 16.) Because the second RVR was issued within six months of the first RVR, that

7   triggered "a committee action of being placed on C-status as a program failure." (*Id*.) This

8   resulted in the loss of "all of his appliances, privileges and packages." (*Id*.) Plaintiff alleges that

9   when Brown became aware of the grievance against him, Brown appointed himself as the hearing

10  officer "just to ensure the guilty finding to further the retaliation. Plaintiff alleges Brown never

11  allowed him to speak "or to put up any defense, then had him removed." (*Id*.) Plaintiff contends

12  Jimenez targeted and harassed him by conducting repeated searches, often after Plaintiff had

13  already been searched by other correctional officers. (*Id*.) Plaintiff asserts he advised a sergeant

14  that he refused to submit to searched by Jimenez as a result. (*Id*. at 16-17.)

15       Plaintiff alleges that days later, he was delayed for an hour when he asked for a supervisor

16  to be present to avoid "being groped again" as Plaintiff attempted to access the law library. (*Id*. at

17  17.) Plaintiff alleges the "retaliatory cell searches continued" and he was "hit again with yet

18  another bogus RVR similar to the last two," resulting in the violation of his right to be free from

19  retaliation by Brown and Jimenez. (*Id*.)

20              b.   Legal Standards

21       Prisoners have a First Amendment right to file prison grievances and retaliation against

22  prisoners for exercising this right is a constitutional violation. *Rhodes v. Robinson*, 408 F.3d 559,

23  566 (9th Cir. 2005). A claim for First Amendment retaliation in the prison context requires: (1)

24  that a state actor took some adverse action against the plaintiff (2) because of (3) the plaintiff's

25  protected conduct, and that such action (4) chilled the plaintiff's exercise of his First Amendment

26  rights, and (5) "the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408

27  F.3d at 567-68. To prove the second element, retaliatory motive, plaintiff must show that his

28  protected activities were a "substantial" or "motivating" factor behind the defendant's challenged

1   conduct. *Brodheim v. Cry*, 584 F.3d 1262, 1269, 1271 (9th Cir. 2009). Plaintiff must provide

2   direct or circumstantial evidence of defendant's alleged retaliatory motive; mere speculation is

3   not sufficient. *See McCollum v. CDCR*, 647 F.3d 870, 882–83 (9th Cir. 2011); accord, *Wood v.*

4   *Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). In addition to demonstrating defendant's knowledge of

5   plaintiff's protected conduct, circumstantial evidence of motive may include: (1) proximity in

6   time between the protected conduct and the alleged retaliation; (2) defendant's expressed

7   opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for

8   the challenged action were false or pretextual. *McCollum*, 647 F.3d at 882.

9                                          c.   Analysis

10          Liberally construing the second amended complaint and accepting all facts as true,

11   Plaintiff plausibly alleges retaliation claims against Defendant Jimenez and Brown. Plaintiff

12   alleges that when Jimenez learned Plaintiff had filed a grievance against him, Jimenez identified

13   Plaintiff as a snitch to other inmates and subjected Plaintiff to frequent searches, even after

14   Plaintiff' had been searched by other correctional officers, in retaliation. Plaintiff alleges that

15   when Brown became aware of the grievance Plaintiff filed, Brown appointed himself as hearing

16   officer, berated Plaintiff for filing a grievance or grievances, and refused to allow him to speak or

17   defend himself before he was removed from the hearing. From the facts alleged, it can be

18   reasonably inferred Plaintiff's First Amendment rights were chilled and Jimenez and Brown's

19   actions did not reasonably advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567-68.

20                       **4.  Claim 4: Eighth Amendment Deliberate Indifference/Medical Need**

21                                          a.   Factual Allegations

22          Plaintiff alleges that RAP panel committee members—Defendants Jackson, Castro,

23   Igbinosa, Ahlmeyer, Grewal, Ramos, Pena, Mejia, Montes, Navarro, Serda, Stovall "and

24   John/Jane Does"—were deliberately indifferent to his serious medical needs "by refusing to issue

25   the Plaintiff a chrono to comply with 'their' instructions to 'lie down in a dark quiet room' by

26   covering his back window or to have it tinted." (Doc. 12 at 17.) Plaintiff alleges that he was

27   housed in a cell with a tinted window due to COVID, but the committee "refused to have it

28   replaced and permanently house him there or to have him in Ad Seg on nondisciplinary where

                                                    12

1    there are no windows." (*Id.*) Plaintiff contends the RAP panel "insisted on allowing custody to

2    dictate medical treatment stating some obscure policy when medical [supersedes] custody." (*Id.*)

3    Plaintiff contends "they 'colluded' with custody" to deprive him of "the necessary

4    accommodations to prevent adverse 'Retaliatory Acts' i.e.: harassment (sexual), excessive cell

5    searches and most importantly, bogus RVR's that's keeping the Plaintiff in prison," amounting to

6    cruel and unusual punishment. (*Id.* at 18.) Plaintiff alleges "[g]uardrails should've been put in

7    place to keep the Plaintiff from being tortured." (*Id.*) Plaintiff contends that he suffers from

8    depression, anxiety, PTSD, and hears voices. (*Id.*) Further, he asserts "because of the negative

9    interaction with the Plaintiff's high power [migraine] meds, the Plaintiff isn't on any [psychiatric]

10   meds and uses his TV as his only coping mechanism to drown out the voices and negative

11   suicidal thoughts." (*Id.*) The additional stress means his migraines are more frequent and more

12   intense. (*Id.*)

13        Plaintiff contends Drs. Ahlmeyer and Grewal knew or should have known that Plaintiff's

14   mental health would rapidly deteriorate without his TV because it is referenced "throughout his

15   mental health file." (Doc. 12 at 18-19.) Plaintiff asserts Ahlmeyer and Grewal should have

16   "advocated for him to keep his TV, which is what's done when an actual crime is committed and

17   he's placed in Ad Seg." (*Id.* at 19.) Instead, because of two minor infractions, Plaintiff "lost his

18   coping mechanism and was tortured for six months." (*Id.*)

19        Plaintiff states he attempted to comply with his primary care physician's instructions

20   concerning his condition. (Doc. 12 at 19.) However, the on-call doctor in the correctional

21   treatment center "(John/Jane Doe #1) refused him treatment in this emergency situation" because

22   it was a weekend. (*Id.*) Plaintiff further Dr. Igbinosa overruled multiple requests by his primary

23   care physicians for a chrono, claiming "it was not medically indicated." (*Id.*)

24                            b.  Legal Standards

25        Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a

26   prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need

27   is serious if failure to treat it will result in "'significant injury or the unnecessary and wanton

28   infliction of pain.'"" *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (9th Cir. 2014) (quoting *Jett v.*

1    *Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059

2    (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th

3    Cir. 1997) (en banc)).

4         To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must

5    first "show a serious medical need by demonstrating that failure to treat a prisoner's condition

6    could result in further significant injury or the unnecessary and wanton infliction of pain.  Second,

7    the plaintiff must show the defendants' response to the need was deliberately indifferent."

8    *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096

9    (quotation marks omitted)).

10        As to the first prong, indications of a serious medical need "include the existence of an

11   injury that a reasonable doctor or patient would find important and worthy of comment or

12   treatment; the presence of a medical condition that significantly affects an individual's daily

13   activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060,

14   1066 (9th Cir. 2014) (citation & internal quotation marks omitted); accord *Wilhelm*, 680 F.3d at

15   1122; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) ("Examples of serious medical needs

16   include '[t]he existence of an injury that a reasonable doctor or patient would find important and

17   worthy of comment or treatment; the presence of a medical condition that significantly affects an

18   individual's daily activities; or the existence of chronic and substantial pain").

19        As to the second prong, deliberate indifference is "a state of mind more blameworthy than

20   negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or

21   safety.'" *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley v. Albers*, 475 U.S. 312,

22   319 (1986)).  Deliberate indifference is shown where a prison official "knows that inmates face a

23   substantial risk of serious harm and disregards that risk by failing to take reasonable measures to

24   abate it." *Id*. at 847. In medical cases, this requires showing: (a) a purposeful act or failure to

25   respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.

26   *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096).  "A prisoner need not show his harm

27   was substantial; however, such would provide additional support for the inmate's claim that the

28

14

1  defendant was deliberately indifferent to his needs." *Jett*, 439 F.3d at 1096, citing *McGuckin*, 974

2  F.2d at 1060.

3  Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060

4  (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from

5  which the inference could be drawn that a substantial risk of serious harm exists,' but that person

6  'must also draw the inference.'" *Id*. at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison

7  official should have been aware of the risk, but was not, then the official has not violated the

8  Eighth Amendment, no matter how severe the risk.'" *Id*. (quoting *Gibson v. County of Washoe,*

9  *Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

10  To prevail on a deliberate-indifference claim, a plaintiff must also show that harm resulted

11  from a defendant's wrongful conduct. *Wilhelm*, 680 F.3d at 1122; *see also Jett*, 439 F.3d at 1096;

12  *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (prisoner alleging deliberate indifference

13  based on delay in treatment must show delay led to further injury).

14  c.  Analysis

15  Liberally construing the second amended complaint and accepting all facts as true, the

16  Court finds Plaintiff plausibly alleges deliberate indifference claims against Defendants Jackson,

17  Castro, Igbinosa, Ahlmeyer, Grewal, Pena, Mejia, Montes, Navarro, Serda, and Stovall. Plaintiff

18  alleges these individuals were aware of his photophobia and his need to lie down in a dark, quiet

19  room, but instead refused to issue a chrono in accordance with that medical recommendation.

20  *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988) (a deliberately indifferent

21  response may be shown by the denial, delay or intentional interference with medical treatment or

22  by the way in which medical care was provided); *Edwards v. Kuersten*, No. 2:21-cv-00259-JAM-

23  EFB P, 2022 WL 2119046, at *2 (E.D. Cal. June 13, 2022) (defendant could be held liable for

24  deliberate indifference based on role in reviewing appeal of RAP decision), report and

25  recommendation adopted, 2022 WL 3371799 (E.D. Cal. Aug. 16, 2022); *Estrada v. Macias*, No.

26  1:15-cv-01292-AWI-SAB (PC), 2017 U.S. Dist. LEXIS 46942, at *6 (E.D. Cal. Mar. 28, 2017)

27  ("[A]ppellate examiners have the ability to end the ongoing constitutional violation alleged by the

28  prisoner in the grievance; by not doing so the appellate reviewer may act in deliberate

15

1    indifference to the continuation of the constitutional violation," citing *Jett v. Penner*, 439 F.3d

2    1091, 1098 (9th Cir. 2006) & *Gonzalez v. Ahmed*, 67 F. Supp. 3d 1145, 1155-56 (N.D. Cal.

3    2014)).

4         Regarding Plaintiff's claim against Jane or John Doe, "the on-call doctor in CTC,"

5    Plaintiff alleges he or she "refused him treatment" in an emergency situation. Liberally construing

6    the second amended complaint, the Court finds Plaintiff states a cognizable deliberate

7    indifference claim against the Jane or John Doe physician.[4]

### 5.  Claim 5: 8th Amendment Conditions of Confinement

#### a.  Factual Allegations

10        Plaintiff alleges the identified Defendants' "failure to meet their own mandatory minimum

11   10 [hours] a week of yard/out of cell time will be spent on CTQ'd (confined to quarters) with no

12   TV, radio, [phone] or hotpot, for a minimum of six months" violated his Eighth Amendment

13   rights. (Doc. 12 at 19-20.) Plaintiff contends he "was afforded eight hours crammed into two

14   days, so if those two days got missed, that's a week straight that'll end up being weeks at a time."

15   (*Id*. at 20.) Plaintiff states that over a period of six month, the time he "spent CTQ'd" amounted to

16   a "gross deprivation of the human need for fresh air, sunlight and exercise." (*Id*.)

17        Plaintiff further contends Defendant Goree is in charge of "running yard while overseeing

18   the entire yard and yard captain making him liable for the deprivation as well as liable for not

19   only failing, but" for refusing to protect Plaintiff's health and safety "along with the rest of the

20   UCC panel." (Doc. 12 at 20.) By refusing to allow him to speak at UCC, Plaintiff was "unable to

21   reiterate his 1824 request to remain in current housing (ADA cell) on the upper yard … a pristine

22   [environment] free from Covid." (*Id*.) Plaintiff was rehoused on the infected lower yard and

23   tested positive for the virus. (*Id*. at 21.) Plaintiff alleges he was knowingly and willfully subjected

24

25   _____

     [4] Plaintiff is advised that the United States Marshal cannot serve Doe defendants. Following the
26   completion of screening, Plaintiff will be required to identify any Doe defendant with enough information
     to locate that individual through service of process. Plaintiff will be given the "'opportunity through
27   discovery to identify the unknown (Doe) defendants.'" *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir.
     2013). Plaintiff may wish to commence efforts to identify the Jane or John Doe physician named in his
28   second amended complaint by consulting the relevant medical records.

1    to "a fatal disease, especially when other options were available to enforce an adverse disciplinary

2    action." (*Id*.) He endured "pure hell" due to illness and "being bounced around to B yard for

3    quarantine, then back to A yard for isolation on top of the stress and anxiety wondering if his life

4    would end." (*Id*.) His migraines were more frequent and excruciating, and he contemplated

5    suicide. (*Id*.)

6          Plaintiff contends Defendant Hernandez "was the interviewer of said 1824, requesting to

7    remain in a Covid free environment." (Doc. 12 at 21.) Plaintiff alleges Hernandez said "'Hell no!

8    We won't be granting this. You'll do your C-status in four block.'" (*Id*.)

9                              b.   Legal Standards

10         "[E]xercise has been determined to be one of the basic human necessities protected by the

11   Eighth Amendment." *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005). More specifically,

12   "long-term denial of outdoor exercise is unconstitutional." *LeMaire v. Maass*, 12 F.3d 1444, 1458

13   (9th Cir. 1993). However, the right to outdoor exercise is not absolute and "the constitutional

14   adequacy of the exercise provided depends upon the individual facts of each case." *Richardson v.*

15   *Runnels*, 594 F.3d 666, 672 (9th Cir. 2010) (internal quotation marks omitted). Prison officials

16   may restrict outdoor exercise based on weather, unusual circumstances, or disciplinary needs. *See*

17   *Spain v. Procunier*, 600 F.2d 189, 199-200 (9th Cir. 1979).

18                              c.   Analysis

19         The Court construes Plaintiff's claim 5 to assert claims against Defendants Goree, and the

20   RAP panel members, and the newly added "interviewer of said 1824" Hernandez.

21         Liberally construing the second amended complaint and accepting all facts as true,

22   Plaintiff plausibly alleges a conditions of confinement claim against Defendant Goree for

23   exercise. Specifically, Plaintiff asserts Goree is "in charge of running the yard while overseeing

24   the entire yard as yard captain." Plaintiff also asserts that over five months in a six-month period

25   he was deprived of "fresh air, sunlight and exercise" because he received "eight hours crammed

26   into two days" such that if those "two days were missed" a week would pass without the ability to

27   exercise outdoors. *Hearns*, 413 F.3d at 1042; *LeMaire*, 12 F.3d at 1458.

28

1        As for Plaintiff's general assertions that he was without a television, radio, and hotpot for

2   about six months in violation of his constitutional rights, he fails to state a claim. Such

3   deprivations are insufficient because they amount to routine discomforts and are not sufficiently

4   grave to warrant relief. *Hudson v. McMillan*, 503 U.S. 1, 8-9 (1992); *see also, e.g., Lira v. Burks*,

5   No. 1:05-cv-01643-LJO-GSA, 2008 WL 906451, at *7 (E.D. Cal. Apr. 1, 2008) ("windowless

6   cement cell, combined with audio disturbances from a ranting mentally ill inmate, denial of

7   visitation, yard exercise, television, and canteen privileges simply does not rise to the level of

8   extreme deprivations that is required for a conditions of confinement claim").

9        Plaintiff's contentions that RAP Panel members and Hernandez violated his Eighth

10   Amendment rights against cruel and unusual punishment by not taking action on his reasonable

11   accommodation request (form 1824) to cover his back window and/or to be housed in a cell with

12   a tinted window due to his medical condition fail to state a claim. Although Plaintiff was

13   rehoused from an ADA cell on an upper tier to another apparently non-ADA cell on a lower tier

14   before contracting COVID-19, these allegations are too attenuated to show a causal connection or

15   link between the actions of these defendants and the deprivation allegedly suffered by Plaintiff.

16   *Rizzo*, 423 U.S. at 373-75; *Johnson*, 588 F.2d at 743. The Court finds Plaintiff has failed to state a

17   claim upon which relief can be granted. For the same reasons, the Court finds granting Plaintiff

18   leave to amend this claim as to the RAP Panel members and Hernandez would be futile. *See*

19   *Hartmann v. CDCR*, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to

20   amend when amendment would be futile").

21                          **d.  Summary of Findings**

22        The Court finds Plaintiff states the following cognizable claims: (1) Eighth Amendment

23   conditions of confinement claims against Defendants Jimenez and Goree (claims 1 & 5); (2)

24   Fourteenth Amendment due process claims against Defendants Goree, Brown, Thomas, Cortez,

25   and Valdez (claim 2); (3) First Amendment retaliation claims against Defendants Jimenez and

26   Brown (claim 3); and (4) Eighth Amendment deliberate indifference to serious medical needs

27   claims against Defendants Jackson, Castro, Igbinosa, Ahlmeyer, Grewal, Pena, Mejia, Montes,

28   Navarro, Serda, Stovall, and Jane or John Doe (claim 4).

18

1    **IV.    CONCLUSION AND RECOMMENDATION**

2        The Court **HEREBY ORDERS** the Clerk of the Court to randomly assign a district judge

3    to this action.

4        For the foregoing reasons, the Court **HEREBY RECOMMENDS** that:

5        1.  This action **PROCEED** on Plaintiff's Eighth Amendment conditions of confinement

6            claims against Defendants Jimenez and Goree (claims 1 & 5), Fourteenth Amendment

7            due process claims against Defendants Goree, Brown, Thomas, Cortez, and Valdez

8            (claim 2), First Amendment retaliation claims against Defendants Jimenez and Brown

9            (claim 3); and Eighth Amendment deliberate indifference to serious medical needs

10           claims against Defendants Jackson, Castro, Igbinosa, Ahlmeyer, Grewal, Pena, Mejia,

11           Montes, Navarro, Serda, Stovall, and Jane or John Doe;

12       2.  That any remaining claims in the second amended complaint be **DISMISSED**; and

13       3.  That named defendant Hernandez be **DISMISSED** from the action.

14       These Findings and Recommendations will be submitted to the United States District

15   Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  **Within 14 days**

16   after being served with a copy of these Findings and Recommendations, a party may file written

17   objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to

18   Magistrate Judge's Findings and Recommendations" and **shall not exceed fifteen (15) pages**

19   without leave of Court and good cause shown. The Court will not consider exhibits attached to

20   the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference

21   the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise

22   reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation

23   may be disregarded by the District Judge when reviewing these Findings and Recommendations

24   under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time

25   //

26   //

27   //

28   //

19

1    may result in the waiver of certain rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839

2    (9th Cir. 2014).

3

4    IT IS SO ORDERED.

5    Dated:   **May 30, 2025**                                    /s/ *Sheila K. Oberto*

6                                                             UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28