UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JEREMY JONES,

Plaintiff,

v.

D. GOREE, et al.,

Defendants.

Case No.: 1:22-cv-01119-JLT-EGC (PC)

**FINDINGS AND RECOMMENDATIONS TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTIONS TO DISMISS**

(Docs. 40, 56)

[14-DAY OBJECTION DEADLINE]

Plaintiff Jeremy Jones is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court are two motions to dismiss the second amended complaint ("SAC") under Federal Rule of Civil Procedure 12(b)(6): one filed by Defendants Ahlmeyer, Brown, Castro, Cortez, Garcia (sued as Serda), Goree, Grewal, Igbinosa, Jackson, Mejia, Montes, Navarro, Pena, Ramos, Stovall, Thomas, and Valdez (Doc. 40), and one filed by Defendant Jimenez (Doc. 56). Plaintiff opposed both motions (Docs. 52, 61), and Defendants replied (Docs. 55, 62). For the reasons below, the undersigned recommends that both motions be granted in part and denied in part.

## I. BACKGROUND

Plaintiff filed this action on September 2, 2022. (Doc. 1.) After two rounds of screening (Docs. 7, 11), he filed the operative SAC (Doc. 12), which the Court found states: (1) Eighth Amendment conditions of confinement claims against Defendants Jimenez and Goree; (2) Fourteenth Amendment due process claims against Defendants Goree, Brown, Thomas, Cortez, and Valdez; (3) First Amendment retaliation claims against Defendants Jimenez and Brown; and (4) Eighth Amendment deliberate indifference claims against Defendants Jackson, Castro, Igbinosa, Ahlmeyer, Grewal, Ramos, Pena, Mejia, Montes, Navarro, Garcia (sued as Serda), Stovall, and a Doe physician. (Docs. 16, 24.) All served Defendants except Jimenez moved to dismiss (Doc. 40), Plaintiff opposed (Doc. 52), and Defendants replied (Doc. 55). Jimenez separately moved to dismiss (Doc. 56), Plaintiff opposed (Doc. 61), and Jimenez replied (Doc. 62). Neither motion challenges the conditions of confinement (outdoor exercise) claim against Goree or the claim against the Doe physician.

As relevant here, the SAC alleges that Plaintiff suffers from debilitating migraines and severe photophobia, and that his medical instructions direct him to lie down in a dark, quiet room during an episode, which he does by covering his cell's back window. (Doc. 12 at 10.) On March 30, 2020, Jimenez ordered him to remove the covering during an episode, declined to relent after Plaintiff showed him his medical instructions, and issued a Rule Violation Report ("RVR"). (*Id.* at 10-11.) After Plaintiff filed grievances against Jimenez and later Brown, Jimenez allegedly labeled him a "snitch," conducted retaliatory cell and body searches, and issued a second RVR in August 2020. (*Id.* at 15-17.) Brown, the senior hearing officer on both RVRs, found Plaintiff guilty each time. (*Id.* at 12, 16.) A classification committee chaired by Goree, with Thomas, Cortez, and Valdez present, then deemed Plaintiff a program failure and placed him on C-status. (*Id.* at 13-14.) Separately, Defendants Jackson, Castro, Igbinosa, Ahlmeyer, Grewal, Ramos, Pena, Mejia, Montes, Navarro, Garcia, and Stovall (the "RAP Defendants"), whom the SAC identifies as members of the prison's Reasonable Accommodation Panel ("RAP"), allegedly refused to issue a chrono allowing Plaintiff to cover or tint his window. (*Id.* at 17-19.) The allegations bearing on each claim are discussed below.

## II. LEGAL STANDARD

Dismissal under Rule 12(b)(6) is proper where the complaint lacks a cognizable legal theory or sufficient facts to support one. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court accepts factual allegations as true but not legal conclusions, *id.*, and construes *pro se* pleadings liberally, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010), though liberal construction "may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (citation omitted). Facts raised for the first time in an opposition are not considered on the motion but may bear on leave to amend. *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003). That the SAC survived screening does not preclude a Rule 12(b)(6) motion, which applies the same standard. *See Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Plaintiff's contrary argument (Doc. 52 at 6) is therefore unavailing.

Qualified immunity shields officials from damages unless their conduct violated a constitutional right that was clearly established at the time. *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009). A right is clearly established when "every reasonable official would have understood that what he is doing violates that right," and existing precedent has placed the question "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation omitted). The plaintiff bears that burden. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002). On a motion to dismiss, the defense is assessed on the facts as alleged. *See Keates v. Koile*, 883 F.3d 1228, 1234-35 (9th Cir. 2018).

## III. DISCUSSION

### A. Preliminary Matters

Plaintiff filed responses to both replies without leave of Court. (Docs. 57, 63.) *See* Local Rule 230(*l*). In light of his *pro se* status, the undersigned has considered them. However, they do

not alter the analysis.[1] The undersigned further recommends that Defendants' request for judicial notice of Plaintiff's abstract of judgment (Doc. 55-1) be denied as unnecessary, because the SAC itself establishes the facts material to the due process analysis. (*See* Doc. 12 at 14, 22.)

**B. Due Process Claims Against Defendants Brown, Goree, Thomas, Cortez, and Valdez**

A due process claim requires, as a threshold matter, a protected liberty interest. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). For a prisoner, state-created liberty interests are generally limited to restraints that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or that "will inevitably affect the duration of his sentence." *Sandin*, 515 U.S. at 484, 487. Loss of privileges generally does not impose an atypical and significant hardship sufficient to create a protected liberty interest. *See Sandin*, 515 U.S. at 484-86. The screening orders did not address this threshold requirement. (*See* Docs. 7, 11, 16.) Defendants argue that the SAC fails to satisfy it (Doc. 40 at 8-11), and the undersigned agrees.

*i. <u>Parole consequences.</u>*

Plaintiff alleges that because of the RVRs he "had to stipulate for three years at his board hearing" and would otherwise have been "seriously considered suitable for parole." (Doc. 12 at 14.) But "[t]he chance that a finding of misconduct will alter the balance" at a parole hearing "is simply too attenuated to invoke the procedural guarantees of the Due Process Clause." *Sandin*, 515 U.S. at 487; *see Nettles v. Grounds*, 830 F.3d 922, 934-35 (9th Cir. 2016) (en banc). Plaintiff concedes as much: he alleges that the RVRs and program-failure designation, "if removed, wouldn't effect [sic] the Plaintiff's overall sentence." (Doc. 12 at 22.) Nor does the SAC allege any forfeiture of credits. Plaintiff's argument that the Board's five-year discipline-free expectation saddles him with "an indefinite sentence" (Doc. 52 at 2) identifies no consequence that would inevitably lengthen his confinement.

---

[1] Doc. 57 attaches an excerpt of a board hearing transcript and a March 2024 classification chrono. (Doc. 57 at 6-10.) Because those materials are outside the SAC, the undersigned considers them only on the question of leave to amend. *Broam*, 320 F.3d at 1026 n.2.

*ii.* *C-status.*

The loss of appliances, packages, television, and other privileges for roughly six months on C-status (Doc. 12 at 13-14, 18-20) is likewise not an atypical and significant hardship. *See Sandin*, 515 U.S. at 486 (30 days in disciplinary segregation); *Christ v. Blackwell*, No. 2:10-cv-0760-EFB P, 2015 WL 5138126, at *7 (E.D. Cal. Sept. 1, 2015) (loss of yard, dayroom, telephone, canteen, and package privileges); *Villery v. Sanders*, No. 1:18-cv-01067-DAD-JDP, 2019 WL 13171398, at *7 (E.D. Cal. Aug. 7, 2019) (privileges lost when on C-Status "are not the sorts of liberty interests that could give rise to a due process violation"). Any claim based on reduced out-of-cell time proceeds under the Eighth Amendment against Goree and is not at issue.

Because the SAC alleges no protected liberty interest, the undersigned does not reach whether the hearings satisfied *Wolff* or Defendants' qualified immunity argument. The due process claims should be dismissed. Because Thomas, Cortez, and Valdez are named only in this claim, they should be dismissed from the action.

**C. Retaliation Claims (Brown and Jimenez)**

A prison retaliation claim requires "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). Circumstantial evidence of motive includes the defendant's knowledge of the protected conduct, timing, expressed opposition to it, and evidence that the stated reasons were pretextual. *McCollum v. Cal. Dep't of Corr. & Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011). "[A]llegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal," and a plaintiff pleads the fifth element by alleging that the action was "arbitrary and capricious" or "unnecessary to the maintenance of order in the institution." *Watison*, 668 F.3d at 1114-15 (citation omitted). Courts defer to prison officials' legitimate penological reasons, *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995), but officials may not use a legitimate process as a cover to punish protected conduct, *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003).

*i. Brown*

The SAC alleges that Brown knew of Plaintiff's grievance against him, assigned himself as hearing officer on the August 2020 RVR "just to ensure the guilty finding," berated Plaintiff "for exercising his First Amendment Right," and refused to let him speak or present a defense. (Doc. 12 at 12, 16.) Knowledge, timing, and expressed opposition to the very grievance at issue plausibly show retaliatory motive. *See McCollum*, 647 F.3d at 882.

Defendants respond that Plaintiff admits violating the window-covering rule, that Brown had already found him guilty of an identical RVR, and that the rule serves legitimate security interests. (Doc. 40 at 11-14; Doc. 55 at 5-7 (citing *Foster v. Runnels*, 554 F.3d 807, 813-14 (9th Cir. 2009)).) These arguments do not warrant dismissal. Whether Brown would have acted the same absent the grievance is a factual question, and the SAC does not concede the basis of the August RVR, which Jimenez himself ties to a refused cell search. (Doc. 56 at 4.) The "some evidence" standard for disciplinary findings does not defeat a claim that the process was used to retaliate. *Hines v. Gomez*, 108 F.3d 265, 268-69 (9th Cir. 1997). And the adverse action alleged is not enforcement of a valid rule but Brown's use of a hearing he assigned himself to punish Plaintiff for his grievance. *Bruce*, 351 F.3d at 1289.

Brown is not entitled to qualified immunity. His reliance on California Code of Regulations, title 15, section 3064 (Doc. 40 at 16-17; Doc. 55 at 1-2 (citing *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994))) is misplaced because Plaintiff does not challenge that regulation. By 2020 it was clearly established that officials may not take adverse action against a prisoner for filing grievances, *Rhodes*, 408 F.3d at 566-68, or use a facially legitimate process as a pretext to do so, *Bruce*, 351 F.3d at 1289-90. The motion should be denied as to this claim.

*ii. Jimenez*

The SAC alleges two theories with respect to Jimenez, each sufficient.

The first is the snitch label. The SAC alleges that "[s]hortly after" the March 2020 incident, Plaintiff submitted a grievance against Jimenez, and that Jimenez "immediately" began telling inmates of other races that Plaintiff had informed on them to a lieutenant. (Doc. 12 at 15.)

Labeling a prisoner a snitch in retaliation for grievances states a claim. *See Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989). The immediacy of the conduct, its target, and its content (which here is casting Plaintiff as someone who reports to supervisors) support an inference of motive beyond timing alone, *see Watison*, 668 F.3d at 1114, and labeling an inmate an informant serves no legitimate correctional goal.

The second is the searches. The SAC alleges that "[a]s soon as" Jimenez learned of Plaintiff's grievances, he conducted a cell search, told Plaintiff he would "think of something" to write him up for, issued an RVR that day, and subjected Plaintiff to invasive body searches, touching him inappropriately to provoke a reaction, often after other officers had already searched him. (Doc. 12 at 15-17.) Knowledge, timing, the "think of something" remark, and repeated searches of an already-searched inmate plausibly show retaliatory motive and pretext. *See McCollum*, 647 F.3d at 882. That regulations authorize searches (Doc. 56 at 15-17) does not show that these searches served a legitimate purpose. *See Bruce*, 351 F.3d at 1289. Jimenez's account that the RVR was for refusing a lawful order is a competing inference that cannot be adopted on the pleadings.[2]

Like the Brown analysis above, Jimenez is not entitled to qualified immunity. Branding a prisoner an informant, *see Valandingham*, 866 F.2d at 1138, or using searches as a pretext, *see Bruce*, 351 F.3d at 1289, in retaliation for grievances was clearly unlawful by 2020. The motion should be denied as to this claim.

**D. Deliberate Indifference Claims Against the RAP Defendants**

A deliberate indifference claim requires a serious medical need and a deliberately indifferent response to it. *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012). The defendant must know of and disregard an excessive risk to the prisoner's health; one who "should have been aware of the risk, but was not" is not liable. *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citation omitted). A difference of medical opinion does not suffice unless the chosen

---

[2] Because the claim survives on these theories, the undersigned need not decide whether it also encompasses the August 2020 RVR. (*See* Doc. 62 at 6-7.) The first screening order described the claim as based on "issuing false RVRs and subjecting him to additional searches." (Doc. 7 at 10.)

course was "medically unacceptable under the circumstances" and chosen "in conscious disregard of an excessive risk to plaintiff's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). But overriding treating physicians' recommendations for non-medical reasons may constitute deliberate indifference. *Colwell v. Bannister*, 763 F.3d 1060, 1068-69 (9th Cir. 2014); *Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc). Liability turns on each defendant's own conduct. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). Defendants do not seriously dispute that Plaintiff's migraines and photophobia are a serious medical need. (*See* Doc. 40 at 18-22.)

*i. Jackson, Castro, Ramos, Pena, Mejia, Montes, Navarro, Garcia, and Stovall.*

The SAC alleges only that these Defendants were RAP members and that the RAP collectively refused the chrono and deferred to custody. (Doc. 12 at 17-18.) It does not allege what any of them knew or did. Committee membership alone does not show that any individual knew of and disregarded a risk to Plaintiff's health. *Leer*, 844 F.2d at 633-34. And the SAC alleges that the Chief Physician and Surgeon determined the chrono was not medically indicated. (Doc. 12 at 19.) Absent facts showing that a non-medical member knew that determination was unacceptable, reliance on it is not deliberate indifference. *See Peralta*, 744 F.3d at 1086-87.[3]

*ii. Ahlmeyer and Grewal.*

The SAC further alleges that these psychologists "knew or should've known" Plaintiff's mental health would deteriorate without his television and "should've intervened" or advocated for him. (Doc. 12 at 18-19.) What a defendant merely should have known describes negligence, not deliberate indifference. *See Toguchi*, 391 F.3d at 1057 ("If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no

[3] Plaintiff's opposition asserts that he submitted documentation with his accommodation requests and that RAP members could access his medical file (Doc. 52 at 4-5), but these facts are not in the SAC and do not identify what any individual knew. Much of the opposition concerns the denial of a sunglasses chrono, which is not alleged here and was the subject of a separate action in which Plaintiff's deliberate indifference claims against Igbinosa, Castro, Mejia, and Navarro were dismissed without leave to amend. *Jones v. Castillo*, No. 1:24-cv-00831-EPG (PC), 2025 WL 521184, at *8-9 (E.D. Cal. Feb. 18, 2025), *findings and recommendations adopted in relevant part*, Doc. 18 (E.D. Cal. Oct. 14, 2025).

matter how severe the risk.”). The SAC does not allege that either knew Plaintiff had lost his television or had any role in the classification decision.

*iii.* *<u>Igbinosa.</u>*

The allegations against Dr. Igbinosa differ. The SAC alleges that Plaintiff’s treating physicians “made multiple attempts to issue [him] a chrono,” that Dr. Igbinosa overruled them “even after” Plaintiff was diagnosed with severe photophobia, and that the RAP on which he sat let custody “dictate medical treatment.” (Doc. 12 at 17-19.) Liberally construed, these allegations plausibly show that Dr. Igbinosa knew of the diagnosis and the treating physicians’ recommendations and overrode them for non-medical reasons. *See Colwell*, 763 F.3d at 1068-69; *Snow*, 681 F.3d at 988. The SAC’s reference to a directive that Plaintiff be housed in a cell not facing the sun (Doc. 12 at 19) may ultimately show that Dr. Igbinosa chose a medically acceptable alternative, but whether his decision reflected medical judgment or deference to custody cannot be resolved on the pleadings.

As to the deliberate indifference claim, the motion should be granted as to the RAP Defendants other than Dr. Igbinosa and denied as to Dr. Igbinosa.

**E. Conditions of Confinement Claim Against Defendant Jimenez**

An Eighth Amendment conditions claim requires an objectively serious deprivation of “the minimal civilized measure of life’s necessities” and deliberate indifference to it. *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) (citation omitted); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The claim rests on a single afternoon: on March 30, 2020, Jimenez ordered Plaintiff to remove his window covering during a migraine and, after seeing his medical instructions, did not permit it. (Doc. 12 at 10-11.) Plaintiff’s opposition does not address this claim (*see* Doc. 61), but the undersigned considers it on the merits.

Jimenez is entitled to qualified immunity. Plaintiff identifies no authority clearly establishing that an officer violates the Eighth Amendment by enforcing a prohibition on cell window coverings, for one afternoon, against a prisoner whose request for a chrono permitting the covering had been denied. (*See* Doc. 12 at 17, 19.) Plaintiff’s medical instructions, as alleged, directed him to lie down in a dark, quiet room; they did not authorize altering his cell. (*Id.* at 10.)

And the Ninth Circuit has recognized the legitimate penological interest in maintaining visibility into cells. *See Grenning v. Miller-Stout*, 739 F.3d 1235, 1240-41 (9th Cir. 2014); *Chappell v. Mandeville*, 706 F.3d 1052, 1058-60 (9th Cir. 2013). Existing precedent did not place the unlawfulness of Jimenez's conduct "beyond debate." *See al-Kidd*, 563 U.S. at 741. The motion should be granted as to this claim.

**F. Leave to Amend**

Leave to amend should be granted unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *see Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc).

Amendment of the due process claims would be futile. Although no screening order flagged the defect, it is legal, and Plaintiff's own allegations and submissions show it cannot be cured. He concedes the RVRs do not affect his sentence. (Doc. 12 at 22.) His parole hearing transcript shows that the three-year stipulation was requested not only because of the RVRs but also because he was completing programming, had not finished his relapse prevention plan, and needed parole plans and support letters, and that he could petition to advance his next hearing. (Doc. 57 at 7-8.) This Court has also previously explained to Plaintiff why the loss of privileges after an RVR does not implicate a liberty interest. *Jones v. Jimenez*, No. 1:14-cv-02045-DAD-SAB (PC), 2019 WL 636839, at *4 (E.D. Cal. Feb. 14, 2019), *findings and recommendations adopted*, Doc. 147 (E.D. Cal. Sept. 17, 2019). Amendment of the conditions claim against Jimenez would be futile because qualified immunity is a legal bar. These claims should be dismissed without leave to amend.

The deliberate indifference claims against the RAP Defendants other than Dr. Igbinosa stand differently. Two screening orders found Plaintiff's allegations against them sufficient, so he has had no notice of these deficiencies, and his opposition suggests additional facts about what individual members knew. (Doc. 52 at 4-5.) Leave to amend these claims should be granted. Any third amended complaint must be complete in itself, Local Rule 220; must restate the claims that proceed; may not add new claims or defendants or reassert claims dismissed without leave; and,

as to each RAP Defendant named, must allege what that person knew, did, or failed to do, and when. Alternatively, Plaintiff may notify the Court that he will proceed on the surviving claims.

## IV. CONCLUSION AND RECOMMENDATIONS

For the foregoing reasons, the undersigned RECOMMENDS that:

1. Defendants' request for judicial notice (Doc. 55-1) be DENIED as unnecessary;
2. The motion to dismiss filed by Defendants Ahlmeyer, Brown, Castro, Cortez, Garcia, Goree, Grewal, Igbinosa, Jackson, Mejia, Montes, Navarro, Pena, Ramos, Stovall, Thomas, and Valdez (Doc. 40) be GRANTED IN PART and DENIED IN PART as follows:
    a. GRANTED, without leave to amend, as to the Fourteenth Amendment due process claims against Defendants Brown, Goree, Thomas, Cortez, and Valdez;
    b. GRANTED, with leave to amend, as to the Eighth Amendment deliberate indifference claims against Defendants Ahlmeyer, Castro, Garcia, Grewal, Jackson, Mejia, Montes, Navarro, Pena, Ramos, and Stovall;
    c. DENIED as to the First Amendment retaliation claim against Defendant Brown; and,
    d. DENIED as to the Eighth Amendment deliberate indifference claim against Defendant Igbinosa;
3. Defendant Jimenez's motion to dismiss (Doc. 56) be GRANTED IN PART and DENIED IN PART as follows:
    a. GRANTED, without leave to amend, as to the Eighth Amendment conditions of confinement claim against Defendant Jimenez; and,
    b. DENIED as to the First Amendment retaliation claim against Defendant Jimenez;
4. Defendants Thomas, Cortez, and Valdez be DISMISSED from this action;

5. Within thirty days of an order adopting these findings and recommendations, Plaintiff be directed either to file a third amended complaint consistent with Section III.F, or to notify the Court that he wishes to proceed only on the claims that remain; and,
6. If Plaintiff does not timely file a third amended complaint, this action proceed on: (a) the First Amendment retaliation claims against Defendants Brown and Jimenez; (b) the Eighth Amendment conditions of confinement (outdoor exercise) claim against Defendant Goree; and, (c) the Eighth Amendment deliberate indifference claims against Defendant Igbinosa and the Jane or John Doe physician; and Defendants Ahlmeyer, Castro, Garcia, Grewal, Jackson, Mejia, Montes, Navarro, Pena, Ramos, and Stovall be dismissed, and the remaining Defendants be directed to answer the SAC.

These Findings and Recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen (14) days after being served with a copy of these Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. *Id.* The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014). This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated: **November 25, 2026**

Erin Sny Castillo

UNITED STATES MAGISTRATE JUDGE